[No. 53417–9.   En Banc.   November 5, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JEREMY A. BOX, *Petitioner.*

*Janet Ainsworth* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Robert S. Lasnik,*

*Chief of Staff,* and *Alfred W. Matthews* and *Daniel L. Kinerk, Deputies,* for respondent.

*Randall Keys* and *Monte E. Hester,* amici curiae for petitioner.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this criminal case is whether the defendant was unconstitutionally assigned the burden of proving his insanity when he was tried and convicted of murder in the first degree.

Jeremy Box confessed that on the morning of May 27, 1984, he strangled Vesta Badeau and cut off her head with a butcher knife. In his recorded confession, the validity of which has not been questioned, he admitted that he had "premeditated it . . . throughout just about the entire . . . night."

On June 6, 1984, he was charged by a second amended information with murder in the first degree, while armed with a deadly weapon. He entered a plea of not guilty by reason of insanity.

A jury trial was held in Superior Court for King County. Defense counsel proposed jury instructions that would have given the State the burden of proving the defendant's sanity beyond a reasonable doubt. The trial court declined to give these instructions and instead instructed the jury that the defendant had the burden of proving his insanity by a preponderance of the evidence.

The jury returned a verdict of guilty as charged. The trial court subsequently sentenced the defendant to life imprisonment. The Court of Appeals affirmed the conviction in an unpublished opinion. We granted discretionary review.[1]

One issue is presented.

## ISSUE

Was it unconstitutional to require the defendant to prove

---

[1] RAP 13.4(b).

his claim of insanity?

## DECISION

CONCLUSION. Insanity, by force of statute, is an affirmative defense in the State of Washington which must be raised by the defendant and proved by the defendant by a preponderance of the evidence. The legislative directives to this effect do not offend either state or federal due process guaranties.

By statute in this state, insanity is a defense that the defendant has the burden of establishing by a preponderance of the evidence.[2] In Washington, a defendant is required to satisfy the M'Naghten rule to prove that he is *legally insane, i.e.,* the defendant must prove that at the time of the offense he or she was unable to perceive the nature and quality of the act charged or was unable to tell right from wrong with regard to that act.[3] More than half the states in the nation join Washington in requiring a defendant to prove a claim of insanity by a preponderance of the evidence.[4] The defendant argues, however, that this requirement violates both federal and state due process guaranties, and that the State should be required to bear the burden of proving a defendant's sanity when a claim of insanity is raised.

The burden which the defendant here seeks to transfer is the burden of persuasion. All courts require a defendant to bear the initial burden of producing some evidence of insanity, since the law presumes that defendants are sane at the time an alleged offense is committed.[5] The disagree-

---

[2]RCW 10.77.030(2).

[3]RCW 9A.12.010; *State v. Crenshaw,* 98 Wn.2d 789, 793, 659 P.2d 488 (1983).

[4]Comment, *Recent Changes in Federal Law: The Federal Insanity Defense,* 46 La. L. Rev. 337, 357 (1985).

[5]R. Slovenko, *The Insanity Defense in the Wake of the Hinckley Trial,* 14 Rutgers L. Rev. 373, 388 (1983); *see also State v. Clark,* 34 Wash. 485, 496, 76 P. 98 (1904).

ment arises, however, over who must bear the burden of persuasion, or the burden of convincing the jury to accept their version of the facts.[6]

First, we consider those jurisdictions that place the persuasion burden on the prosecution when insanity is at issue. Those jurisdictions argue that the two basic elements of a crime are a criminal act (actus reus) and a criminal intent (mens rea).[7] The issue of criminal responsibility focuses on the defendant's capacity to have the requisite criminal intent, or mens rea.[8] Society presumes the innocence of the accused and imposes on the prosecution the burden of proving the defendant's guilt beyond a reasonable doubt. Because guilt cannot be proven without proof of the defendant's mental capacity to commit the crime, such jurisdictions reason, the prosecution should bear the burden of proving the defendant's sanity. They consider that if the burden of proving insanity is placed on the accused, the accused will be forced to disprove an essential element of the crime (sanity), and they reason that this is no more appropriate than requiring a defendant to disprove commission of a criminal act.[9] In short, jurisdictions that place the burden of persuasion on the prosecution view sanity as an element required to formulate the mental state necessary for criminal behavior; hence, they require the State to prove it.[10]

Next we examine the other jurisdictions which, like Washington, place the burden on the defendant. These jurisdictions do not perceive a necessary relationship

---

[6]1 W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 4.5(e), at 499–501 (1986).

[7]G. Morris, *The Insanity Defense: A Blueprint for Legislative Reform* 43 (1975).

[8]G. Morris, at 43.

[9]G. Morris, at 43.

[10]Comment, 46 La. L. Rev. at 357; Slovenko, 14 Rutgers L. Rev. at 388.

between sanity and actus reus and mens rea.[11] Such jurisdictions differentiate the presence of mens rea from the capacity for responsible behavior, and perceive the issue of criminal irresponsibility as an affirmative defense to be proved by the defendant rather than as an element of the crime to be proved by the prosecution.[12] In these jurisdictions, the presumption of innocence that justifies placing the burden of persuasion on the prosecution is considered offset by the presumption of sanity.[13]

In the federal system, recent legislation transferred the burden of persuasion from the prosecution to the defendant, who is now required to prove his or her insanity by clear and convincing evidence.[14] Cases interpreting the new federal legislation establish that placing the burden of proving insanity upon the defendant does not violate federal constitutional law.[15] In a series of cases, the United States Supreme Court has indicated that the allocation of the burden of proof as to insanity is not an issue of constitutional magnitude.

In 1952, the United States Supreme Court upheld an Oregon statute, since repealed, that required the accused to establish his insanity "beyond a reasonable doubt".[16] That case was *Leland v. Oregon,* 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002 (1952), wherein the Court held that due process does not guarantee any particular allocation of the persuasion burden.[17] This holding was questioned by some after the Court subsequently held in *In re Winship,* 397 U.S.

---

[11]Slovenko, 14 Rutgers L. Rev. at 388.

[12]D. Hermann, *The Insanity Defense* 15 (1983); G. Morris, at 43.

[13]G. Morris, at 43.

[14]18 U.S.C. § 17.

[15]Comment, 46 La. L. Rev. at 355.

[16]*Leland v. Oregon,* 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002 (1952).

[17]*Leland,* at 799.

358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970),[18] that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged". In *Mullaney v. Wilbur,* 421 U.S. 684, 705, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975) (Rehnquist, J., concurring), however, Justice Rehnquist wrote that he saw no conflict between *Leland* and *Winship.*

In *Mullaney,* the Court held that a Maine statute requiring a murder defendant to prove that he acted in the heat of passion violated the *Winship* due process requirement that the prosecution must prove every fact necessary to constitute the crime charged.[19] Justice Rehnquist wrote separately to show that the Court's opinion did not threaten the earlier holding in *Leland.* He stated that although evidence relevant to insanity may also be relevant to whether the required mens rea was present, the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime. As he wrote, "[f]or this reason, Oregon's placement of the burden of proof of insanity on Leland . . . did not effect an unconstitutional shift in the State's traditional burden of proof beyond a reasonable doubt of all necessary elements of the offense."[20] A majority of the Court evidently agreed with Justice Rehnquist, since in *Rivera v. Delaware,* 429 U.S. 877, 50 L. Ed. 2d 160, 97 S. Ct. 226 (1976), the Court thereafter dismissed, as not presenting a substantial federal question, an appeal claiming that a state statute was unconstitutional because it required the defendant to prove insanity by a preponderance of the evidence.

The United States Supreme Court expressly declined to

---

[18]*See* G. Morris, at 44.

[19]*Mullaney v. Wilbur,* 421 U.S. 684, 704, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975) (Rehnquist, J., concurring).

[20]*Mullaney,* at 706 (Rehnquist, J., concurring).

reconsider *Leland* and *Rivera* in *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977). At issue in *Patterson* was the validity of a New York law requiring the defendant in a second degree murder prosecution to prove the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter. The Court upheld that law, holding that the defense did not negate any facts of the crime that the State had to prove to convict, but was a separate issue on which the defendant carried the burden of persuasion.[21] The Court stated that in convicting Patterson under its murder statute, New York did no more than *Leland* and *Rivera* permitted it to do without violating the due process clause.

> [O]nce the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence.

*Patterson,* at 206. The *Patterson* opinion added that proof of the nonexistence of all affirmative defenses has never been constitutionally required.[22] In *Jones v. United States,* 463 U.S. 354, 368 n.17, 77 L. Ed. 2d 694, 103 S. Ct. 3043 (1983), the Court again cited *Leland* with approval.

It is thus apparent that under current federal law, the fact of insanity does not negate, and is not even directly related to, the element of mens rea or intent. Accordingly, sanity does not become an element of a crime and federal due process guaranties requiring the prosecution to prove all facts constituting a crime are not offended when a defendant is given the burden of proving his or her claim of insanity.

The defendant and amicus curiae argue, however, that a different result is required under Washington case law and

---

[21]*Patterson v. New York,* 432 U.S. 197, 206–07, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977).

[22]*Patterson,* at 210.

state constitutional due process guaranties. They argue specifically that the burden of proving sanity should be borne by the State given the analysis and result of this court's opinions in *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983) and *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984).

In *McCullum,* this court held that in a first degree murder prosecution, the State must prove the absence of self–defense beyond a reasonable doubt.[23] Then in *Acosta,* this court also held that the State bears the same burden when self–defense is raised in a prosecution for second degree assault.[24]

Both opinions initially cited *Winship* in noting that due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged.[25] The *McCullum* court then observed that the State bears the burden of proving beyond a reasonable doubt the absence of a defense if that absence is an ingredient of the offense and there is some evidence of the defense.[26] Whether the absence of a defense is an ingredient of the offense is determined in one of two ways: (1) the statute may reflect a legislative intent to allocate the burden of proof to the State, or (2) one or more elements of the defense may negate one or more elements of the offense which the prosecution must prove beyond a reasonable doubt.[27]

In considering part one of this test, both *McCullum* and *Acosta* commented on the new criminal code's silence con-

---

[23] *State v. McCullum,* 98 Wn.2d 484, 496, 656 P.2d 1064 (1983).

[24] *State v. Acosta,* 101 Wn.2d 612, 616, 683 P.2d 1069 (1984).

[25] *McCullum,* at 489; *Acosta,* at 615.

[26] *McCullum,* at 490.

[27] *See McCullum,* at 490; *Acosta,* at 615.

cerning the burden of proof as to self–defense.[28] These opinions then observed, however, that the Legislature had *clearly* provided that a defendant must prove certain defenses by a preponderance of the evidence, and specifically pointed to insanity as one such defense.[29] The *Acosta* court concluded that "[t]he Legislature's silence on the burden of proof of self–defense, in contrast to its specificity on these other defenses, is a strong indication that the Legislature did not intend to require a defendant to prove self–defense."[30]

Here we are presented with clear–cut proof that the Legislature *did* intend to require a defendant to prove his or her claim of insanity. RCW 10.77.030(2), which allocates the insanity burden of proof to defendants, codifies the common law rule in existence in this state from territorial days.[31] Thus, in this case we are presented with a demonstrated legislative intent *not* to treat the absence of insanity as an ingredient of first degree murder. Indeed, this court has underscored that intent by flatly declaring that sanity is *not* an element of a criminal offense.[32]

Turning to part two of the *McCullum* test, the court there concluded that self–defense negates the element of intent, which is an element that the State must prove in a first degree murder case.[33] The court in *Acosta* similarly concluded that proof of self–defense negates the knowledge element of second degree assault.[34]

Self–defense has been held to negate the mens rea of first

---

[28] *McCullum*, at 492; *Acosta*, at 615.

[29] *McCullum*, at 492; *Acosta*, at 615.

[30] *Acosta*, at 615–16.

[31] *State v. McDonald*, 89 Wn.2d 256, 271, 571 P.2d 930 (1977).

[32] *See McDonald*, at 271.

[33] *McCullum*, at 495.

[34] *Acosta*, at 616.

degree murder because self–defense is defined as a lawful act,[35] and the crime of first degree murder requires "intent", which is defined as acting "with the objective or purpose to accomplish a result which constitutes a crime."[36] The requirement of intent is thus held to be inconsistent with a lawful act.[37] Similarly, self–defense negates the mens rea of second degree assault because self–defense is defined as a lawful act, and the crime of second degree assault requires "knowledge", which is defined as being "aware of a fact, facts, or circumstances or result described by a statute defining an offense".[38] The requirement of knowledge is thus likewise held to be inconsistent with the lawful act of self–defense.

By contrast, committing an act under an insane impulse does not make that act lawful. Rather, if a claim of insanity is raised, once the elements of murder are proved, the defendant's inability to distinguish right from wrong is examined in an attempt to determine his or her culpability for the murder.[39] As one court recently explained it,

> [I]nsanity entitles a defendant to an acquittal not because it establishes innocence (*i.e.,* state has failed to prove element of criminal intent) but because the state declines to convict or punish one shown to have committed the crime while mentally impaired. . . . In other words, the mental state of "insanity" does not go to the elements of the crime but merely the ultimate culpability of the accused.

(Citations omitted.) *Gilcrist v. Kincheloe,* 589 F. Supp. 291, 294 (E.D. Wash. 1984), *aff'd,* 774 F.2d 1173 (9th Cir. 1985).

---

[35]RCW 9A.16.020(3).

[36]RCW 9A.08.010(1)(a); *State v. Russell,* 47 Wn. App. 848, 851, 737 P.2d 698 (1987).

[37]*See Russell,* at 851; *State v. Peters,* 47 Wn. App. 854, 859, 737 P.2d 693 (1987).

[38]RCW 9A.08.010(1)(b)(i); *Russell,* at 851.

[39]*See* D. Hermann, at 127.

The defendant in this case also argues that the defense of insanity negates the element of premeditation as well as the intent required to prove first degree murder. We recently reiterated that premeditation is the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.[40] The defendant cites no case law for his contention that an insane person cannot premeditate an act. We do not believe that legal insanity precludes thinking beforehand about an act, even though such thoughts may be confused or irrational.

It is, therefore, our conclusion that insanity does not negate any element of first degree murder. Under the second part of the *McCullum* and *Acosta* test, the absence of insanity is not an element of first degree murder and need not be proven beyond a reasonable doubt by the State. We further conclude that the statute (RCW 10.77.030(2)), which requires a defendant to prove a claim of insanity by a preponderance of the evidence, offends neither federal nor state due process guaranties.

The trial court did not err in declining to give the defendant's proposed instructions pertaining to the insanity burden of proof nor did the Court of Appeals err in affirming the defendant's conviction of murder in the first degree.

Affirmed.

PEARSON, C.J., BRACHTENBACH, DOLLIVER, CALLOW, and DURHAM, JJ., and SCHUMACHER, J. Pro Tem., concur.

DORE, J. (dissenting)—I dissent.

The majority holds that the defendant in a criminal trial may be required to bear the burden of persuasion on the issue of insanity. This violates the state constitution's guaranty of due process because sanity is an element of criminal intent, and therefore of the crime charged, and because the burden of proving every element of the crime

---

[40]*State v. Bingham*, 105 Wn.2d 820, 823, 719 P.2d 109 (1986).

must always rest with the State.

The majority recognizes the latter rule because it could not do otherwise. It is well established under both the state and United States constitutions that the burden of persuasion on an element of the crime may never be shifted to the defendant. *State v. Roberts,* 88 Wn.2d 337, 340, 562 P.2d 1259 (1977); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

The majority reaches its result in spite of this well established rule by holding that sanity is not an element of the crime charged. Instead, it is contended, the defense of insanity is established by the Legislature as a separate matter of policy, and it may be expanded or contracted by the Legislature without constitutional restraint. The majority breaks the link between sanity and criminal intent or mens rea, and concludes it is therefore not unconstitutional to require the defendant to rebut a presumption of sanity.

This is contrary to the established law of this state, which has recognized from its earliest days that sanity is an element of intent, and of the crime charged, and that this is a rule of constitutional magnitude. In *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), the court overturned an attempt by the Legislature to abolish the insanity defense completely. Article 1, section 3 of the Washington Constitution prohibited this, the court reasoned, *because sanity is an element of intent and of mens rea to be proved by the state as part of its case.*

> We believe enough has been said to show that the sanity of the accused, at the time of committing the act charged against him, has always been regarded as much a substantive fact, going to make up his guilt, as the fact of his physical commission of the act.

*Strasburg,* at 119. The *Strasburg* court explicitly rejected the premise of the majority here, that the insanity defense is a creature of statute, its force and scope a matter for the Legislature alone to decide. The State made the same

argument in *Strasburg.*

Learned counsel for the state contend that the legislature has the power to eliminate the element of intent from any and all crimes, and that it can provide punishment for the commission of any act it chooses to define as criminal, regardless of the intent or want of intent with which such act may be committed. . . .

. . . Whatever the power may be in the legislature to eliminate the element of intent from criminal liability, we are of the opinion that such power cannot be exercised to the extent of preventing one accused of crime from invoking the defense of his insanity at the time of committing the act charged, and offering evidence thereof before the jury. One so accused had this right at the time of the adoption of our constitution, and we are of the opinion that the question is so inherently related to the guilt or innocence of all accused persons that it cannot be now taken away from them without violating these guarantees of the constitution.

*Strasburg,* at 120–21.

It may be contended that *Strasburg* merely prohibits the Legislature from abolishing the defense, but does not bar it from limiting the defense by placing the burden of persuasion on the defendant. This ignores the reasoning of the case. The defense has constitutional standing and cannot be affected in any way by mere statute. What is more, it is of constitutional magnitude *because* sanity is an inseparable part of mens rea. The Legislature may not tamper with the defense because "the sanity of the accused . . . [is] as much a substantive fact, going to make up his guilt, as the fact of his physical commission of the act." *Strasburg,* at 119. If sanity is a part of mens rea, the burden of establishing it cannot be shifted to the defendant. *State v. Roberts, supra; In re Winship, supra.*

The constitutional premise of *Strasburg* has been repeatedly recognized by this court. *See State v. Hennessy,* 114 Wash. 351, 368, 195 P. 211 (1921); *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962), *cert. denied,* 375 U.S. 883 (1963). In *White,* the court wrote:

This court reasoned that the element of mens rea or

"guilty mind," constitutionally cannot be ignored and that mental irresponsibility, *which negates the existence of mens rea,* cannot, therefore, be abolished as a defense. (Italics mine.) *White,* at 597. The majority now chooses to abandon this settled understanding that sanity is a component of mens rea, and to do so without even a mention of *Strasburg, Hennessy* or *White.*

Of course, it might be argued that the court's holding today implicitly overrules or limits *Strasburg.* That might be plausible if the premise of *Strasburg* did not enter into the very definition of insanity in this state. It does, however. Both the definition of insanity and the definition of criminal intent in Washington turn on an appreciation of the unlawfulness of the act committed. If a defendant cannot appreciate the unlawfulness of his act, so that he meets the definition of insanity, it necessarily follows that he cannot appreciate the unlawfulness of his act, and so cannot form criminal intent. Sanity is an element of intent, of mens rea, and of the crime charged. The burden of persuasion cannot constitutionally be shifted to the defendant.

Washington has adopted the M'Naghten rule of insanity by statute. RCW 9A.12.010 provides in part:

To establish the defense of insanity, it must be shown that:

(1) At the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:

(a) He was unable to perceive the nature and quality of the act with which he is charged; or

(b) He was unable to tell right from wrong with reference to the particular act charged.

The second disjunctive element in this test has always been interpreted to mean: Can the defendant form the requisite mens rea to imply culpability? In *State v. Reece,* 79 Wn.2d 453, 456, 486 P.2d 1088 (1971), this court wrote: "[T]he purpose of the insanity test is to aid in determining the culpability of the defendant, that is, to obtain an answer to the question: did he have the requisite intent to establish the mens rea?" *State v. Collins,* 50 Wn.2d 740, 754, 314

P.2d 660 (1957), states:

> The law inquires not into the peculiar constitution of mind of the accused, or the mental weaknesses or disorders or defects with which he may be afflicted, but solely into the question of his capacity, at the time he committed a forbidden act, to have a criminal intent.

This is the very same criminal intent which the State is required to prove as part of its case. The statutory definition of criminal intent, RCW 9A.08.010(1)(a), provides: "*Intent*. A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime." This has been interpreted by this court to mean that criminal intent with regard to homicide consists in part in an appreciation of the unlawfulness of the act.

> Rather, it appears to us that unlawfulness—including the absence of self–defense—is an essential ingredient of the crime charged. Since proof of self–defense negates the element of intent in first degree murder, requiring an accused to prove self–defense places on him or her the burden of proving absence of an unlawful criminal intent.

*State v. McCullum*, 98 Wn.2d 484, 496, 656 P.2d 1064 (1983). In other words, under the law of this State as it has heretofore been understood, criminal intent and sanity both consist of an appreciation of the unlawfulness of the act. The wedge the majority drives between them in order to shift the burden of persuasion on insanity to the defendant violates the integrity of our criminal law. The court should hesitate to take such a step.

The majority argues that *McCullum* is not apposite because it deals with self–defense and because self–defense, unlike insanity, is expressly declared by statute to render the act of homicide lawful. RCW 9A.16.020(3). This ignores the fact that the element of intent might be absent, and the act lawful, for a different reason. Intent might be absent because the defendant was insane; because he could not appreciate the unlawfulness of his act and because the Legislature and this court have defined both criminal intent

and sanity as the ability to appreciate the unlawfulness of the act.

The majority also argues that the court has already approved the constitutionality of shifting the burden of proving insanity, citing *State v. McDonald,* 89 Wn.2d 256, 271–72, 571 P.2d 930 (1977). However, the court there upheld the burden–shifting statute, RCW 10.77.030(2), against a federal constitutional challenge. The court did not separately consider independent state constitutional grounds for overturning the statute. Those grounds have, however, been raised by appellant here, and the court should carefully consider them. The majority does not do so.

We recently set forth the nonexclusive factors to be considered when deciding to rely on the state constitution to grant broader individual rights than those afforded by the federal constitution. *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). The fourth factor is said to be:

> 4. *Preexisting state law.* Previously established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights. State law may be responsive to concerns of its citizens long before they are addressed by analogous [federal] constitutional claims. Preexisting [state] law can thus help to define the scope of a constitutional right later established.

106 Wn.2d at 61–62. Nothing could describe this situation more accurately. The *Strasburg* case, decided in 1910, expressly relied on state, not federal, constitutional grounds. The issue was framed as whether, at the time the Washington Constitution was adopted, the principle of insanity's negating mens rea was firmly established and therefore incorporated into the State's constitution.

> We have quoted from and cited authorities upon this question to this extent in order to show . . . how firmly fixed in our system of jurisprudence was this doctrine of *incapacity* of insane persons to commit crime at the time of the enactment of our criminal code of 1909, but, also, to conclusively show that, at the time of the adoption of

our constitution, . . . this doctrine was in full force in the territory of Washington as a part of the common law, unimpaired by judicial decision or legislative enactment. (Italics mine.) *Strasburg,* 60 Wash. at 115.[41] This state constitutional law and the court's interpretation of the State's criminal intent statute combine in cases such as *Strasburg, White, Reece* and *McCullum* to create a body of due process law distinct and different from that considered in *McDonald* and the majority opinion here. That due process guaranty, Const. art. 1, § 3, prohibits the shifting of the burden of proving insanity to the defendant. Sanity is an element of mens rea and of the crime charged under Washington law, and that burden must always be borne by the State. *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). The inescapable conclusion is that RCW 10.77-.030(2) is unconstitutional as a violation of the state due process clause.

I would therefore reverse appellant's conviction and remand the case to the trial court for a new trial under a proper instruction on the burden of persuasion on the insanity defense.

UTTER, J., concurs with DORE, J.

---

[41]The opinion here discusses the definition of insanity in connection with the right to a jury trial and the incorporation of that definition into that guaranty. The same reasoning applies to the decision's alternative ground, the due process guaranty of Const. art. 1, § 3.