[No. 11171-7-III.    Division Three.    May 9, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. VICTOR A. LEFABER, *Appellant*.

*Patrick K. Stiley* and *Stiley & Associates; Lynn M. Mounsey,* for appellant.

*John G. Wetle, Prosecuting Attorney,* for respondent.

MUNSON, J. — Victor LeFaber appeals the judgment on a verdict of guilty of first degree manslaughter. He contends relevant evidence was improperly excluded; the State failed to prove absence of self-defense; and the jury instructions misstated the law on self-defense, failed to allocate the burden of proof on that issue to the State, and included a prejudicial instruction on intoxication.

Mr. LeFaber and Alice Letts met Evan Stephens in the summer of 1989. Mr. Stephens was looking for work as a carpenter and they hired him to work on a log home they were building. During the time Mr. Stephens was working for them, various neighbors told Mr. LeFaber and Ms. Letts about incidents in which Mr. Stephens had become violent or threatening or engaged in bizarre behavior, particularly when he had been drinking. Mr. LeFaber also heard Mr. Ste-

phens making threats and inappropriate comments, though the threats were not directed at him.

Mr. Stephens completed his part of the work on December 11 and Ms. Letts and Mr. LeFaber invited him to their home for dinner. When Mr. Stephens arrived for dinner it appeared he had been drinking heavily. He continued to drink after dinner while they watched a movie. Ms. Letts went to bed around 11 p.m. Mr. LeFaber and Mr. Stephens continued drinking and listening to music until Mr. LeFaber indicated he was tired and wanted to go to bed. Without any warning Mr. Stephens tipped over the coffee table and began throwing chairs. Mr. LeFaber became frightened and asked him to leave.

Mr. Stephens left, slamming the door. Mr. LeFaber awakened Ms. Letts to show her what had happened. Mr. Stephens remained outside and began screaming and howling. Ms. Letts decided to drive to her daughter's home and telephone the sheriff. While she was gone, Mr. Stephens came back to the house and demanded Mr. LeFaber's bottle of whiskey. Mr. LeFaber gave him the whiskey and asked him to promise to leave. Mr. Stephens continued to stand outside yelling.

When Ms. Letts returned she told Mr. Stephens she had called the police. Mr. Stephens then began making threatening statements and pounding on the door. Mr. LeFaber fired a warning shot from his shotgun, but Mr. Stephens persisted in hitting the door and shouting threats. Fearing Mr. Stephens would break down the door and kill them, Mr. LeFaber fired a second shot, using a shotgun slug rather than pellets, striking Mr. Stephens in the left shoulder and killing him. Mr. Stephens' body was found on the LeFaber doorstep, with one hand in his pocket and without a weapon.

Mr. LeFaber was charged with second degree murder, RCW 9A.32.050(1)(a). He claimed the killing was justified self-defense. The jury found him guilty of first degree manslaughter.

■ Mr. LeFaber contends the court erred in excluding testimony by several of his neighbors about prior incidents which led them to believe Mr. Stephens was violent or men-

tally unbalanced. The evidence was offered in support of Mr. LeFaber's self-defense claim prior to Mr. LeFaber testifying. The essence of self-defense is that the defendant "reasonably believed that [he] was in imminent danger of death or great bodily harm, in light of all the facts and circumstances known to [him]." *State v. Kelly*, 102 Wn.2d 188, 197, 685 P.2d 564 (1984).

Generally, evidence of a person's prior acts is not admissible to prove a person's character and that he acted in conformity with that character. ER 404(b); *State v. Bell*, 60 Wn. App. 561, 564, 805 P.2d 815, *review denied*, 116 Wn.2d 1030 (1991). The proffered testimony was not relevant to show Mr. Stephens was violent on the evening he was killed. However, evidence of specific acts may be admitted if it is relevant to prove a material issue. ER 404(b); *State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982). Prior violent incidents would be relevant to establish Mr. LeFaber's reasonable apprehension on the night of the crime, an essential element of his self-defense claim, but only if it was shown that he knew of those incidents. The other witnesses testified prior to Mr. LeFaber; they did not testify that he knew of the incidents. Absent evidence of Mr. LeFaber's knowledge, evidence of Mr. Stephens' prior acts was not relevant to prove reasonable apprehension. However, Mr. LeFaber testified he had heard of these incidents.

■ Evidence of specific instances of a person's conduct may be admissible to prove character if the person's character is an essential element of a defense. ER 405(b); *State v. Alexander*, 52 Wn. App. 897, 765 P.2d 321 (1988). Absent evidence the defendant knew of this conduct, the victim's propensity for violence is not an essential element of a defendant's claim he acted in justifiable self-defense. *Alexander*, at 901; *see Kelly*, at 196. The other witnesses were not recalled after Mr. LeFaber testified. There was no error.

■ Mr. LeFaber also claims the court erred in excluding the audio portion of a videotaped reconstruction of the crime. He argues the audio portion was relevant to show the sound of Mr. Stephens hitting his door was very frightening. The court has wide discretion in determining the admissibility of

demonstrative evidence, and must ensure that it is substantially accurate. *State v. Lord*, 117 Wn.2d 829, 822 P.2d 177 (1991), *cert. denied*, 113 S. Ct. 164 (1992). The court noted the difficulty in accurately reproducing the original sound using speakers, particularly as to volume of the sound, and determined the potential for prejudice outweighed its probative value. The court did not abuse its discretion.

Mr. LeFaber contends instruction 20,[1] on the justifiable homicide defense, was defective for two reasons: he argues the instruction incorrectly permitted the jury to rely on a lack of actual imminent danger as a basis for determining the absence of self-defense without regard to his subjective perception; and the instruction failed to make manifestly clear the State's burden of proving the absence of a justification based on self-defense.

WPIC 16.02 reads in part:

> Homicide is justifiable when committed in the lawful defense of the slayer when:
> (1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;
> (2) there was imminent danger of such harm being accomplished; and
> (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of the incident.

■ Mr. LeFaber's argument may well apply to the suggested format of pattern instruction WPIC 16.02, although it

---

[1]Instruction 20, to which Mr. LeFaber took no objection, reads:

"It is a defense to a charge of Murder in the Second Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.

"The defendant may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the defendant taking into consideration all the facts and circumstances known to the defendant at the time and prior to the incident. The force employed may not be more than is necessary.

"The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable."

appears to be a strained interpretation. However, the trial court combined (1) and (2) to read: "Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when the defendant reasonably believes that the person slain intends to inflict death or great personal injury *and* there is imminent danger of such harm being accomplished." (Italics ours.) The conjunction "and" combines two independent clauses, thus joining them to relate to the phrase "reasonably believed". Under that instruction a jury would apply the "reasonable belief" requirement to both the intent to inflict death or great personal injury and also to the imminent danger of such being accomplished. In the format of the pattern instruction, a jury might mistakenly believe that there was a requirement of "actual imminent danger" even though the word "actual" does not appear therein. Instruction 20 was not in the pattern format. There is no error.

Mr. LeFaber also argues the jury instructions were defective in that a separate instruction was not used to inform the jury the State had the burden of proving the absence of self-defense. He cites *State v. Acosta*, 101 Wn.2d 612, 683 P.2d 1069 (1984). *Acosta* held the State has the burden of proving the absence of self-defense, and this must be clearly stated in the jury instructions. The jury instructions in *Acosta* included an instruction on the elements of the crime and included a statement that if the defendant acted in self-defense the verdict should be not guilty. The Supreme Court held this instruction inadequate, and recommended a separate instruction on self-defense. Here, the jury was given instruction 20, the last sentence of which made the State's burden to prove absence of self-defense "manifestly apparent". There was no error.

Mr. LeFaber contends the State failed to carry its burden of proving he did not act in self-defense. In a murder prosecution, the State must prove the absence of self-defense beyond a reasonable doubt. *State v. Box*, 109 Wn.2d 320, 327, 745 P.2d 23 (1987); *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983). Evidence is sufficient if the jury could find the absence of self-defense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

The evidence showed Mr. LeFaber was armed, and an unarmed Mr. Stephens was on the other side of a locked door. In view of Mr. LeFaber's ability to shoot an assailant, a jury could conclude beyond a reasonable doubt that Mr. LeFaber could not reasonably believe there was imminent danger of Mr. Stephens inflicting great bodily harm unless he actually broke down the door and took some threatening action. Or the jury could conclude that, even if there was imminent danger, shooting Mr. Stephens in the chest from a distance of 2 feet while he remained outside the home with one hand in his pocket was more force than was necessary at that moment or was more force than a reasonably prudent person would employ under the circumstances known to Mr. LeFaber. The State met its burden of proof.

The court instructed the jury on the legal significance of a defendant's voluntary intoxication. Mr. LeFaber contends this instruction confused the jury and prejudiced his defense.

The court properly decides whether to instruct the jury on a possible defense. *State v. Passafero*, 79 Wn.2d 495, 498, 487 P.2d 774 (1971); *State v. Davenport*, 33 Wn. App. 704, 657 P.2d 794 (1983), *rev'd on other grounds*, 100 Wn.2d 757, 675 P.2d 1213 (1984). There was substantial evidence Mr. LeFaber was intoxicated at the time of the shooting. The jury instruction was a correct statement of the law. *State v. Corwin*, 32 Wn. App. 493, 649 P.2d 119, *review denied*, 98 Wn.2d 1004 (1982). The instruction was proper.

Mr. LeFaber contends the accumulation of errors deprived him of a fair trial. The combined effect of errors may require a new trial even though none of the errors, standing alone, is of sufficient gravity to constitute grounds for a new trial. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). We do not find this assignment of error to be meritorious.

We affirm.

THOMPSON, C.J., concurs.

SCHULTHEIS, J. (concurring in part, dissenting in part) — I concur in all respects save for the majority's assessment of instruction 20. From that holding, I respectfully dissent.

We should take this opportunity to express strong disapproval of the pattern instruction on which instruction 20 is based instead of merely cautioning that "Mr. LeFaber's argument may well apply to the suggested format of pattern instruction WPIC 16.02[.]" Majority, at 770. Commendably, the trial judge discerned the ambiguity of the pattern instruction and attempted to eliminate it. Regrettably, the effort did not go far enough. Although a vast improvement, the instruction given still allows a jury to interpret the elements in either of two ways. The jury could have, as hypothesized by the majority, read the instruction to mean "Homicide is justifiable . . . when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and [reasonably believes that] there is imminent danger of such harm being accomplished." It is equally plausible the jury read the instruction to mean "Homicide is justifiable . . . when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and there is [in fact] imminent danger of such harm being accomplished."

The determination of whether a slayer acted in self-defense has always been made on the basis of the reasonableness of the slayer's belief, based on his subjective perception and knowledge, that danger is imminent. *State v. Allery*, 101 Wn.2d 591, 594-95, 682 P.2d 312 (1984); *State v. Wanrow*, 88 Wn.2d 221, 235-36, 559 P.2d 548 (1977). Imminent danger need not be present in fact. *State v. Theroff*, 95 Wn.2d 385, 390, 622 P.2d 1240 (1980). An instruction which can be interpreted to state that homicide is justifiable only if there is actual imminent danger misstates the law.

WPIC 16.02 has been repeatedly approved by the courts. *State v. Jones*, 95 Wn.2d 616, 623-24, 628 P.2d 472 (1981); *State v. Brenner*, 53 Wn. App. 367, 375-76, 768 P.2d 509, *review denied*, 112 Wn.2d 1020 (1989); *State v. Martineau*, 38 Wn. App. 891, 894-95, 691 P.2d 225 (1984), *review denied*, 103 Wn.2d 1020 (1985); *State v. Negrin*, 37 Wn. App. 516, 521 n.1, 681 P.2d 1287, *review denied*, 102 Wn.2d 1002 (1984). Research reveals no case, however, in which the ambiguity in the pattern instruction has been brought to the

attention of the court. It is also notable that an instruction essentially identical to instruction 20 has been approved as "adequate", although again, ambiguity was not at issue. *State v. Benn*, 120 Wn.2d 631, 658 n.5, 845 P.2d 289, *cert. denied*, 510 U.S. 944, 126 L. Ed. 2d 331, 114 S. Ct. 382 (1993).

A variety of minor changes would improve instruction 20 to the point of adequacy; *e.g.*, inserting the term "that" between "and" and "there", thus referring the reader back to the slayer's reasonable belief;[2] inserting the term "both" between "believes" and "that";[3] a combination of the two;[4] or inserting "reasonably believes that" between "and" and "there".[5] The last of these is redundant, repetitive, reiterative, duplicative and says the same thing twice, but stylistic niceties must give way to serving the function of jury instructions, which is to declare the law with as much accuracy, precision and neutrality as can be mustered.

I am aware that the current version of WPIC 16.02 is based on RCW 9A.16.050(1) and that the statute reflects the same ambiguity as does the pattern instruction. However, the concept of self-defense was not born by virtue of this 1975 enactment. It existed long before. *State v. Miller*, 141 Wash. 104, 105-06, 250 P. 645 (1926). The Legislature is presumed to have been aware of existing judicial construction when enacting RCW 9A.16.050. *State v. McCullum*, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983). Ambiguity notwithstanding, nothing in the statute suggests it was intended to change the existing state of the law. *McCullum*, at 492-93.

---

[2]"Homicide is justifiable . . . when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and *that* there is imminent danger of such harm being accomplished."

[3]"Homicide is justifiable . . . when the defendant reasonably believes *both* that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished."

[4]"Homicide is justifiable . . . when the defendant reasonably believes *both* that the person slain intends to inflict death or great personal injury and *that* there is imminent danger of such harm being accomplished."

[5]"Homicide is justifiable . . . when the defendant reasonably believes that the person slain intends to inflict death or great personal injury and *reasonably believes that* there is imminent danger of such harm being accomplished."

Because due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged, the jury must be instructed on each element of the offense. *State v. Ng*, 110 Wn.2d 32, 44, 750 P.2d 632 (1988); *see also State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995). An ambiguous jury instruction which can be read to misstate the justifiable homicide defense is an error of constitutional magnitude and for that reason may be raised for the first time on appeal. *State v. Scott*, 110 Wn.2d 682, 688 n.5, 757 P.2d 492 (1988). The error is presumed prejudicial unless it is trivial and in no way affected the outcome. *Negrin*, at 522. In light of instruction 20, the jury could have found that Mr. LeFaber reasonably believed Mr. Stephens intended great personal injury, but that in fact there was no imminent danger because Mr. Stephens was unarmed, still outside the house and the police were presumably en route. Thus, the error may have affected the outcome and reversal is required.

Review granted at 127 Wn.2d 1017 (1995).